**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

Civil Action No. 26-4606

CROCS, INC. and JIBBITZ, INC.,

Plaintiffs,

v.

FIVE BELOW, INC.,

Defendant.

---

**COMPLAINT FOR TRADEMARK AND TRADE DRESS INFRINGEMENT,
TRADEMARK AND TRADE DRESS DILUTION,
DESIGN PATENT INFRINGEMENT,
UTILITY PATENT INFRINGEMENT, AND UNFAIR COMPETITION**

---

Plaintiffs Crocs, Inc. ("Crocs") and Jibbitz, Inc. ("Jibbitz") (together, "Plaintiffs") bring this Complaint against Defendant Five Below, Inc. ("Five Below" or "Defendant"), and, in support thereof, allege as follows:

## INTRODUCTION

1. This action arises out of the sale and promotion by Five Below on its website, located at fivebelow.com (the "Five Below Website"), and in its retail stores throughout the United States, including in the State of Colorado, of shoes and related products that: (a) infringe and dilute the distinctive trade dress of Crocs Classic Clog shoes; (b) infringe a design patent owned by Crocs; and (c) infringe patents owned by

Jibbitz covering systems and methods for securing decorative charms and other accessories to shoes, other articles of clothing, and other wearable items.

2. This is an action brought pursuant to the Lanham Act, 15 U.S.C. § 1051, et seq., the Patent Act, 35 U.S.C. § 100, et seq., and the common law of the State of Colorado, arising out of Defendant Five Below's infringement and dilution of Plaintiff Crocs' exclusive rights in its distinctive Crocs Classic Clog trade dress, infringement of Crocs' exclusive rights in its patented design, and infringement of Plaintiff Jibbitz's exclusive rights in its patented inventions.

**THE PARTIES**

3. Plaintiff Crocs is a Delaware corporation with its principal place of business located in Broomfield, Colorado.

4. Plaintiff Jibbitz is a Colorado corporation with its principal place of business located in Broomfield, Colorado. Jibbitz is a wholly-owned subsidiary of Crocs.

5. Jibbitz was originally formed as a limited liability company named "Jibbitz, LLC." On January 24, 2022, Jibbitz, LLC filed a Certificate of Conversion with the Colorado Secretary of State, through which Jibbitz, LLC converted from a limited liability company to a corporation and changed its name to Jibbitz, Inc.

6. Upon information and belief, Defendant Five Below, Inc. is a corporation that is incorporated in Pennsylvania and has its principal place of business at 701 Market Street, Suite 300, Philadelphia, Pennsylvania 19106. Upon information and belief, Five Below sells casual footwear and accessories throughout the United States.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because Crocs' and Jibbitz's claims arise under the Lanham Act, 15 U.S.C. § 1051, et seq. and under the Patent Act, 35 U.S.C. § 100, et seq. The Court has supplemental jurisdiction over the state and common law causes of action asserted herein pursuant to 28 U.S.C. § 1338(b).

8. This Court also has jurisdiction over the subject matter of this action on the basis of diversity pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are citizens of different U.S. states, and the amount in controversy exceeds $75,000, excluding interests and costs. Specifically, Crocs is incorporated in Delaware and has its principal place of business in Colorado, Jibbitz is incorporated in Colorado and has its principal place of business in Colorado, and Five Below is incorporated in Pennsylvania and has its principal place of business in Pennsylvania.

9. The Court has personal jurisdiction over Five Below because Five Below conducts substantial business in Colorado, including through its retail stores located in Colorado such as the Five Below location in Flatiron Crossing at 51 W Flatiron Crossing Dr., Suite 1122, Broomfield, CO 80021 and through its highly interactive Five Below Website that, upon information and belief, has reached, targeted, advertised to, and sold to customers located in Colorado Five Below's infringing products. Five Below sells and ships products to addresses in Colorado, and Five Below has transacted business with customers in Colorado. Crocs and Jibbitz assert claims of trademark infringement, unfair competition, and patent infringement arising, in part, from that business activity. Five

Below is registered to do business in Colorado, and its registered agent for service of process is Corporation Service Company, 1900 W. Littleton Boulevard, Littleton, Colorado

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district, and pursuant to 28 U.S.C. § 1400(b) because Five Below has committed acts of infringement in this district and has a regular and established place of business in this district.

## FACTUAL ALLEGATIONS

### Crocs' Exclusive Trade Dress Rights

11. Crocs is a world leader in innovative casual footwear for women, men, and children, combining comfort and style with a value that consumers know and love. Crocs' brands include Crocs, HEYDUDE, and JIBBITZ. Crocs products are sold in more than 85 countries through wholesale and direct-to-consumer channels.

12. Crocs sells approximately 150 million pairs of shoes each year and has annual sales of more than $4 billion. It is one of the world's largest casual non-athletic footwear brands.

13. Crocs distributes its iconic footwear through a vast network of domestic distribution channels, including major retailers and department stores such as Nordstrom, Journeys, Foot Locker, Finish Line, Urban Outfitters, Shoe Carnival, Designer Shoe Warehouse, and Famous Footwear; sporting good and outdoor retailers such as REI, Dick's Sporting Goods, and Academy Sports; and online retail outlets like Zappos.com, and Amazon.com. Crocs also distributes its footwear through numerous specialty

channels, including gift shops, collegiate bookstores, uniform suppliers, independent bicycle dealers, specialty food retailers, and health and beauty stores. Crocs footwear is available for sale in countless store locations domestically, and Crocs sells its footwear through its websites, e.g., www.crocs.com, and in Crocs retail stores all over the world.

14. First introduced more than twenty years ago, the Crocs Classic Clog, as pictured below, has become one of the most iconic footwear designs in the world.




15. Crocs owns valuable rights in the distinctive design and trade dress of its Crocs Classic Clog shoes. Crocs is the owner of trademark registrations Nos. 5,149,328 (the "328 Registration") and 5,273,875 (the "875 Registration") (together, "the 3D Registrations") on the Principal Register of the U.S. Patent and Trademark Office ("USPTO") for certain elements of the Crocs Classic Clog design. True and correct copies of the 328 Registration and the 875 Registration are attached hereto as Exhibits A and B, respectively.

16. The 3D Registrations depict a sloping front section of a clog-style shoe containing an instantly-recognizable pattern of holes. Both 3D Registrations also feature a clean, sharp demarcation between this sloping horizontal field of holes and a horizontal strip running around the front of the shoe that is further patterned with both trapezoidal openings and slight texture. The overall boxy profile of the Crocs Classic Clog shoes includes a distinctive upturned toe around the front of the shoe. The 875 Registration also includes a decorative band along the strap.

17. The trade dress shown in the 3D Registrations is visible from virtually any angle of Crocs Classic Clog shoes, and predominates the overall design of the shoe, making the Crocs Classic Clog shoes instantly recognizable, as depicted below:





18. As a result of its iconic design, the Crocs Classic Clog shoe featuring the trade dress shown in the 3D Registrations has enjoyed immediate and consistent commercial success since its launch in 2003. Crocs' advertising has prominently featured the trade dress shown in the 3D Registrations, and the trade dress shown in the 3D

Registrations also features prominently in widespread media attention, examples of which are shown below:









**Save the Crocs**

By Robin Reck August 12, 2013

I love Crocs. These three words are things I never wanted, nor ever expected, to say. But, alas, I have reached a point in my life where Crocs are an integral part of my daily life. Now, don't get ahead of yourselves...I do not personally own a pair but instead spend a lot of money (a lot) on Crocs (and Jibbitz) for my kids. These shoes are remarkable.



Croc and Roll

The maker of the popular funky footwear is on the hunt for its next big hit

19. The Crocs Classic Clog remains one of the most wanted and best-selling footwear products of the 21st century, with hundreds of millions of pairs sold.

20. Crocs has generated substantial revenue from the sales of its footwear products featuring the trade dress shown in the 3D Registrations. Over the past three calendar years, Crocs has sold millions of pairs of shoes featuring the trade dress shown

in the 3D Registrations in the United States, corresponding to hundreds of millions of dollars in revenue.

21. In addition to its rights under the 3D Registrations, Crocs also owns exclusive common law trade dress rights in the overall appearance of the Crocs Classic Clog shoes, including the elements of that appearance identified in the 3D Registrations. Crocs also owns exclusive common law trade dress rights in the overall appearance of accessories and other products featuring elements of that appearance. The overall appearance of the Crocs Classic Clog shoes and accessories and other products featuring that appearance is not functional and, by virtue of Crocs' long use of the trade dress and Crocs' extensive sales and advertising of shoes and accessories and other products featuring elements of the trade dress, the trade dress has acquired secondary meaning identifying accessories and other products that feature elements of the trade dress as originating with Crocs.

**Crocs' Exclusive Design Patent Rights**

22. In addition to its trademark rights described above, Crocs owns U.S. Design Patent No. D1,100,450 (the "450 Patent") for the ornamental design of its footwear. The 450 Patent claims the ornamental design as shown and described in the patent. A true and correct copy of the 450 Patent is attached hereto as Exhibit C.

23. The ornamental design reflected in the 450 Patent is a result of Crocs' collaboration with visionary industrial designer Salehe Bembury. Crocs first collaborated with Bembury to introduce the Pollex Clog in 2021. This highly anticipated release resulted in one of the fastest global sell-throughs for a Crocs collaboration. Following the

first launch's incredible success, Crocs and Bembury released seven new colorways of the Pollex Clog in 2022, each selling out within the first few hours.

24. Crocs' collaboration with Bembury continued with the release, in July 2024, of the Crocs Saru clog shoes, shown below, which feature the design covered by the 450 Patent.



**Jibbitz's Exclusive Patent Rights**

25. In 2005, Jibbitz began manufacturing and selling its innovative Jibbitz charms. The Jibbitz charms have revolutionized apparel customizability, allowing customers to customize their footwear products and other wearable items to their personal taste.

26. Like Crocs shoes, Jibbitz charms are sold through a wide range of distribution channels, including department stores, specialty footwear stores, sporting goods stores, outdoor retailers and other specialty channels. In addition, Jibbitz charms are sold on Crocs websites such as www.crocs.com, as well as at Crocs stores throughout the United States and worldwide.

27. Like Crocs, Jibbitz has invested heavily in intellectual property rights, including patents that protect the design and functional features of Jibbitz's innovative charms used with shoes, other articles of clothing, and other wearable items.

28. In recognition of Jibbitz's innovation, the USPTO has issued to Jibbitz U.S. Patent No. 7,698,836 (the "836 Patent"), U.S. Patent No. 8,122,519 (the "519 Patent"), and U.S. Patent No. 8,782,814 (the "814 Patent"). True and correct copies of the 836 Patent, the 519 Patent, and the 814 Patent (collectively, the "Jibbitz Patents") are attached hereto as Exhibits D, E, and F, respectively.

29. The 836 Patent, entitled "System and Method for Securing Accessories to Clothing," was issued on April 20, 2010, and names Richard Schmelzer and Sheri Schmelzer as the inventors. The 519 Patent, entitled "System and Method for Securing Accessories to Wearable Items," was issued on February 28, 2012, and names Richard Schmelzer and Sheri Schmelzer as the inventors. The 814 Patent, also entitled "System and Method for Securing Accessories to Clothing," was issued on July 22, 2014, and names Richard Schmelzer and Sheri Schmelzer as the inventors. Jibbitz, LLC was the owner and assignee of the entire right, title, and interest in each of the Jibbitz Patents, which are valid and enforceable patents.

30. Recognizing the innovative design of the Jibbitz charms and the market potential, Crocs acquired Jibbitz and its intellectual property in 2006. The acquisition included the family of then-pending patent applications that gave rise to the Jibbitz Patents.

**Five Below's Trade Dress and Patent Infringement**

31. Other companies have attempted to create and sell knockoff versions of Crocs footwear, seeking to trade on the immense popularity of the Crocs brand.

32. Five Below is one such company. Five Below sells clog-style shoes, including products sold as the Five Below "Juniors Charm Clog" (the "Accused Products"), that copy the unique sole design of the Saru Clog shown in the 450 Patent and the trade dress shown in the 3D Registrations for the Crocs Classic Clog shoes almost identically, clearly attempting to trade off the significant investment Crocs has made in its brand and the trade dress of its Crocs Classic Clog shoes.

33. As shown in the chart below, the Accused Products feature essentially the identical sole design reflected by the 450 Patent:

| Figure 1 | Accused Products |
|---|---|
|  |  |
| **Figure 2** | **Accused Products** |
|  |  |

| Figure 3 | Accused Products |
| --- | --- |
|  |  |
| **Figure 4** | **Accused Products** |
|  |  |
| **Figure 5** | **Accused Products** |
|  |  |
| **Figure 6** | **Accused Products** |
|  |  |

| Figure 7 | Accused Products |
|---|---|
|  |  |

34. In addition, the Accused Products include the same overall appearance as the Crocs Classic Clog shoes featuring the trade dress shown in the 3D Registrations. The Accused Products incorporate a pattern of holes on the horizontal portion of the upper, a textured band on the upper, and trapezoidal openings around the front rim of the shoe that are substantially similar to those shown in the 3D Registrations.

| 328 Registration | 875 Registration | Crocs Classic Clog |
|---|---|---|
|  |  |  |
| **Five Below Juniors Charm Clog (Accused Products)** | | |
|  | | |

35. Rather than compete fairly with Jibbitz, Defendant Five Below has also sought to capitalize on the success of Jibbitz's innovations by marketing imitation charms (the "Accused Charms") that are used in combination with molded shoes, as shown above, to infringe the Jibbitz Patents. Five Below has also encouraged its customers to use the Accused Charms in connection with molded footwear, including displaying the Accused Charms in clogs in its retail stores. Five Below has wrongly sought to capitalize on the success of Jibbitz's innovations by directly and indirectly infringing the Jibbitz Patents.

36. Five Below has sold products that are comprised of shoes together with decorative charms of the types described and claimed in the Jibbitz Patents, and the charms sold by Five Below as part of such products are designed and intended to be affixed to the shoes with which they are sold.

37. As a further effort to unfairly trade on Crocs' goodwill and consumers' recognition of the Crocs trade dress, Five Below has offered a Novelty Shoe Purse that mimics elements of the Crocs Classic Clog trade dress and copies a similar product sold by Crocs, the Classic Clog Pouch Bag Charm, as shown in the chart below:

| **Classic Clog Pouch Bag Charm** | **Five Below Novelty Shoe Purse** |
|---|---|
|  |  |

38. The Five Below Novelty Shoe Purse incorporates instantly-recognizable elements of the Crocs Classic Clog trade dress, including the sloping front section containing a pattern of holes, the clean demarcation between the field of holes and the horizontal strip, and the overall boxy, clog-shaped silhouette.

39. Five Below's designs are likely to cause confusion among consumers, who are likely to mistakenly believe that Crocs is the source of Five Below's knockoff products or that the Five Below products are associated with, affiliated with, or licensed by Crocs.

40. Five Below has offered for sale, distributed and sold its products, including the Accused Products and the Five Below Novelty Shoe Purse, on the internet through fivebelow.com and in its retail stores located throughout the United States, including stores in Colorado.

41. Five Below's products are priced lower than Crocs products.

42. Five Below promotes and sells the Accused Products as casual or lifestyle shoes designed for men, women, and children.

43. Upon information and belief, Five Below copied the distinctive design of the Crocs Classic Clog and the unique design shown in the 450 Patent.

44. The Accused Products infringe the Classic Clog Trade Dress, the trade dress shown in the 3D Registrations, the 450 Patent, the Jibbitz Patents, and Crocs' common law rights.

45. Plaintiffs have caused to be purchased from Five Below samples of the products sold by Five Below, including the Accused Products and the Five Below Novelty Shoe Purse. Such products were purchased in the State of Colorado.

46. Five Below's infringement of Plaintiffs' rights has been willful, deliberate and intentional.

47. The 450 Patent and the Jibbitz Patents were issued prior to the first sale by Five Below in the United States of the infringing products described above. If Five Below had conducted a reasonable search for any patents relevant to the sale of such products in the United States, Five Below would have easily identified the 450 Patent and the Jibbitz Patents. Five Below therefore either proceeded with knowledge of the 450 Patent and the Jibbitz Patents or failed to conduct such a search and acted with willful blindness with respect to whether such patents existed.

48. On March 4, 2026, Plaintiffs, by and through their counsel, sent Five Below a letter (the "Demand Letter"), in which Plaintiffs (i) identified Five Below's infringing products, including the Juniors Charm Clog and associated charms; (ii) set forth Plaintiffs' intellectual property rights, including the 3D Registrations, the Crocs Classic Clog Trade Dress, the '450 Patent, and the Jibbitz Patents; (iii) detailed the manner in which Five Below's products infringed and diluted Crocs' trade dress and infringed the 450 Patent and the Jibbitz Patents; and (iv) demanded that Five Below immediately cease its infringing activities.

49. On March 9, 2026, Five Below acknowledged receipt of the Demand Letter and stated that it would "respond in short order" to the Demand Letter. On March 27, 2026, after receiving a follow-up e-mail message from Plaintiffs' counsel, Five Below again acknowledged receipt of the Demand Letter and indicated it would provide a "substantive reply" the following week.

50. On April 17, 2026, more than a month after Five Below received the Demand Letter, Five Below was still selling the infringing shoes, charms, and related products at Five Below's retail stores, including the store located at Park Meadows Mall, 8680 Park Meadows Center Drive in Lone Tree, Colorado. Five Below's continued infringement following receipt of the Demand Letter was therefore knowing, intentional, and willful.

51. On May 20, 2026, Plaintiffs' counsel sent Five Below a second letter, noting Five Below's continued infringement and failure to substantively respond to Crocs' communications (the "Follow up Letter").

52. Five Below has never provided a substantive response addressing Crocs' notice of infringement or the specific demands set forth in the Demand Letter or the Follow-up Letter.

53. As recently as June 16, 2026, Five Below was continuing to sell the infringing shoes, charms, and related products at Five Below's retail stores, including its stores in Colorado.

54. Five Below knew or should have known that its acts infringe the 3D Registrations, the Crocs Classic Clog Trade Dress, the '450 Patent, the Jibbitz Patents, and Crocs' common law rights. Five Below has therefore acted willfully, without regard for Plaintiffs' rights.

## FIRST CAUSE OF ACTION

### Trademark Infringement in Violation of 15 U.S.C. § 1114(1)

55. Crocs realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

56. The trade dress of the Crocs Classic Clog shoes is inherently distinctive and is a strong, valid, and protectable trademark owned by Crocs.

57. Crocs' federal trademark registrations for its trade dress constitute *prima facie* evidence of the validity of the marks shown in the 3D Registrations, of Crocs' registration and ownership of the marks, and of Crocs' exclusive right to use the marks in commerce or in connection with the goods identified in the registrations.

58. Defendant Five Below's products are likely to cause confusion, to cause mistake, or to deceive with respect to the marks shown in the 3D Registrations.

59. The above-described acts of Defendant constitute infringement of registered trademarks, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

60. Defendant has unfairly profited from its trademark infringement.

61. By reason of Defendant's acts of trademark infringement, Crocs has suffered damage to the goodwill associated with the marks shown in the 3D Registrations.

62. Defendant's acts of trademark infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Crocs and the valuable goodwill associated with the trade dress of the Crocs Classic Clog shoes, including the elements shown in the 3D Registrations.

63. Defendant's infringement has been willful. Five Below has known of the 3D Registrations and its infringement thereof since at least March 4, 2026, when Crocs sent Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter.

64. By reason of Defendant's acts, Crocs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Crocs is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

65. By reason of Defendant's willful acts of trademark infringement, Crocs is entitled to an increased award of Defendant's profits under 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**

**Trade Dress Infringement in Violation of 15 U.S.C. § 1125(a)**

66. Crocs realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

67. The design and trade dress of the Crocs Classic Clog (the "Crocs Classic Clog Trade Dress") includes the elements shown in the 3D Registrations, the overall design and appearance of the Crocs Classic Clog shoes, and other distinctive and recognizable elements, as alleged above.

68. As a result of Crocs' advertising, the Crocs Classic Clog Trade Dress now has a secondary and distinctive meaning to potential purchasers of clog-style shoe products, in that potential purchasers associate with Crocs the marks shown in the 3D Registrations and the Crocs Classic Clog Trade Dress.

69. Defendant Five Below intentionally designed its own products to be confusingly similar to the Crocs Classic Clog Trade Dress so as to mislead customers into believing that the products sold on the Five Below Website and in its retail stores are Crocs products.

70. Crocs and Five Below operate in the same industry, sell the same types of products, and sell products through the same channels, including retail stores and online platforms.

71. The confusingly similar aspects of the Five Below shoes include the overall appearance of the shoes, the pattern of holes on the horizontal portion of the upper of the shoe that is similar to the pattern of holes shown in the 328 Registration and 875 Registration and featured in the Crocs Classic Clog shoes; the trapezoidal openings around the front rim of the shoe that are similar to those shown in the 328 Registration and the 875 Registration and featured in the Crocs Classic Clog shoes; and the textured strip and decorative band that are similar to those shown in the 875 Registration and featured in the Crocs Classic Clog shoes.

72. The Crocs Classic Clog Trade Dress is arbitrary and nonfunctional. The shape and pattern of the holes and trapezoidal openings on Crocs Classic Clog shoes are not essential to the function of the shoe, nor do they affect the cost or quality of the shoes.

73. The Crocs Classic Clog Trade Dress has become identified in the market for casual or lifestyle shoes designed for men, women, and children as originating with Crocs.

74. Crocs has exclusively and continuously used the Crocs Classic Clog Trade Dress since at least as early as June of 2003.

75. Crocs has extensively advertised and promoted its Classic Clog products and featured the elements of the Crocs Classic Clog Trade Dress in such advertising and promotional materials.

76. Upon information and belief, Defendant Five Below purposefully and willfully selected and copied the Crocs Classic Clog Trade Dress for the design of its own clog shoes in bad faith to trade off the goodwill of Crocs' trade dress.

77. Crocs has not licensed or otherwise authorized Defendant Five Below to use the Crocs Classic Clog Trade Dress.

78. Defendant Five Below's use of the trade dress and overall design of Five Below's unauthorized clog shoes constitutes use of a false designation of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

79. Crocs has been damaged by Defendant Five Below's misappropriation and unauthorized use of the distinctive Crocs Classic Clog Trade Dress.

80. Defendant has unfairly profited from its acts of trade dress infringement.

81. By reason of Defendant's acts of trade dress infringement, Crocs has suffered damage to the goodwill associated with the distinctive Crocs Classic Clog Trade Dress.

82. Defendant's acts of trade dress infringement have irreparably harmed and, if not enjoined, will continue to irreparably harm Crocs and the valuable goodwill associated with the Crocs Classic Clog Trade Dress.

83. Defendant's infringement has been willful. Five Below has known of the Crocs Classic Clog Trade Dress and its infringement thereof since at least March 4, 2026, when Crocs sent Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter.

84. By reason of Defendant's acts, Crocs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Crocs is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

85. By reason of Defendant's willful acts of trade dress infringement, Crocs is entitled to an increased award of Defendant's profits under 15 U.S.C. § 1117.

**THIRD CAUSE OF ACTION**

**Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**

86. Crocs realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

87. The Crocs Classic Clog Trade Dress, including the marks shown in the 3D Registrations, is a famous mark within the meaning of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)(2), and became famous prior to any act of Five Below complained of herein.

88. The acts of Five Below complained of herein are likely to cause dilution by blurring, in violation of Section 43(c) of the Lanham Act, by impairing the distinctiveness of the Crocs Classic Clog Trade Dress and harming the reputation of the Crocs Classic Clog Trade Dress.

89. Defendant has unfairly profited from its acts of trademark dilution.

90. By reason of Defendant's acts of trademark dilution, Crocs has suffered damage to the goodwill associated with the Crocs Classic Clog Trade Dress.

91. Defendant's acts of trademark dilution have irreparably harmed and, if not enjoined, will continue to irreparably harm Crocs and the valuable goodwill associated with the Crocs Classic Clog Trade Dress, including the elements shown in the 3D Registrations.

92. Defendant's acts of trademark dilution have been willful. Five Below has known of the Crocs Classic Clog Trade Dress and the 3D Registrations, as well as its diluting conduct, since at least March 4, 2026, when Crocs sent Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter.

93. By reason of Defendant's acts, Crocs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant. Crocs is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

94. By reason of Defendant's willful acts of trademark dilution, Crocs is entitled to an increased award of Defendant's profits under 15 U.S.C. § 1117.

**FOURTH CAUSE OF ACTION**

**Common Law Unfair Competition and Trade Dress Infringement**

95. Crocs realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

96. Crocs invested considerable time and resources in developing the design and trade dress of its Classic Clog shoes, which have been a valuable source of revenue to Crocs.

97. Defendant Five Below has appropriated the trade dress and design of the Classic Clog shoes without Crocs' permission and in an attempt to take market share away from Crocs.

98. Five Below's conduct constitutes common law unfair competition and was carried out willfully and in wanton disregard of Crocs' rights.

99. Defendant's conduct has been willful and in wanton disregard of Crocs' rights. Upon information and belief, Five Below's decision to offer the Accused Products was made with the specific intent to copy and trade on the success and reputation of Crocs and Crocs' offerings. Five Below has known of the Crocs Classic Clog Trade Dress and its infringement thereof since at least March 4, 2026, when Crocs sent Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter.

100. Crocs is therefore entitled to injunctive relief and to compensatory and punitive damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**

**Infringement of the 450 Patent in Violation of 35 U.S.C. § 271**

101. Crocs realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

102. On November 4, 2025, the USPTO duly and legally issued U.S. Design Patent No. D1,100,450, entitled "Footwear," naming Salehe Bembury, Michael Sarantakos, Federico Fongher, and Alessandro Raciti as the inventors. Crocs, Inc. is the owner and assignee of the entire right, title, and interest in the 450 Patent, which is a valid and enforceable patent.

103. Five Below has been and is directly infringing the 450 Patent in violation of 35 U.S.C. § 271(a) by making, using, offering for sale, and selling in the United States, including within this judicial district, the Accused Products, which embody substantially the same overall visual appearance as the ornamental design claimed in the 450 Patent.

104. Attached hereto as Exhibit G is a chart showing each of the figures of the 450 Patent and the use of the feature shown in the figure in the Accused Products.

105. An ordinary observer, giving such attention as a purchaser usually gives, would find the overall design of the 450 Patent and the Accused Products substantially similar such that the ordinary observer would be deceived into believing that the Accused Products are the same as the patented design, thereby purchasing the Accused Products thinking they were the patented design.

106. Five Below's infringement of the 450 Patent has been willful. Five Below has known of the 450 Patent and its infringement thereof since at least March 4, 2026, when Crocs sent Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter.

107. Five Below's acts of infringement of the 450 Patent have caused and will continue to cause Crocs damages for which Crocs is entitled to compensation pursuant

to 35 U.S.C. §§ 284 and 289, including Five Below's total profits from the sale of the Accused Products.

108. Five Below's acts of infringement of the 450 Patent have caused and will continue to cause Crocs immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Crocs has no adequate remedy at law.

**SIXTH CAUSE OF ACTION**

**Infringement of the 836 Patent in Violation of 35 U.S.C. § 271**

109. Jibbitz realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

110. The 836 Patent was duly and legally issued by the USPTO and was a valid and enforceable patent during the term thereof.

111. Five Below has directly infringed the 836 Patent in violation of 35 U.S.C. § 271(a) by displaying (i.e., using) on the Five Below Website the Accused Charms with molded shoes, making the Accused Charms, and selling the Accused Charms together with molded shoes.

112. Five Below has directly infringed the claims of the 836 Patent, including at least Claim 26 of the 836 Patent.

113. Claim 26 of the 836 Patent recites a system for securing a decorative accessory, the system comprising;

> a shoe having at least one expandable hole in an upper portion of the shoe;

a shaft having first and second ends;

a first shoulder secured to the first end of the shaft, the first shoulder being configured for insertion through one of the at least one expandable hole and configured to engage an inner surface of the upper portion of the shoe, the first shoulder being larger in diameter than the expandable hole through which it is inserted when that expandable hole is in its unexpanded state; and

a second shoulder secured to the second end of the shaft, the second shoulder being configured to engage an outer surface of the upper portion of the shoe, the second shoulder comprising the decorative accessory.

114. When an Accused Charm is integrated with a molded shoe, the resulting system (the "Accused Products") includes all of the elements of, and therefore infringes, Claim 26 of the 836 Patent. Five Below offers and sells the Accused Products, thereby providing a complete system that infringes Claim 26 of the 836 Patent.

115. Attached hereto as Exhibit H is a claim chart that provides further detail and photographic evidence showing how the Accused Products sold by Five Below infringe at least Claim 26 of the 836 Patent.

116. Five Below has also induced infringement of and contributorily infringed the 836 Patent, in violation of 35 U.S.C. §§ 271(b) and 271(c). Five Below has known of the 836 Patent and its infringement thereof since at least March 4, 2026, when Crocs sent

Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter .

117. Five Below sells the Accused Products for customer integration in a system that directly infringes Claim 26 of the 836 Patent as depicted in Exhibit H, despite knowledge of (or willful blindness to) the fact that such a system infringes the 836 Patent. The Accused Products are especially made or adapted to infringe the 836 Patent, are not staple articles of commerce, and have no substantial non-infringing uses. Five Below is therefore liable for both active inducement of infringement and contributory infringement of the 836 Patent.

118. Five Below's infringement of the 836 Patent has been willful because Five Below has directly and indirectly infringed the 836 Patent despite knowledge of (or willful blindness to) the facts underlying the infringement, at least since receiving the March 4, 2026 Demand Letter.

119. As a result of Five Below's infringement, Jibbitz has suffered and will continue to suffer money damages, loss of revenue, lost sales, loss of profits, and irreparable harm.

**SEVENTH CAUSE OF ACTION**

**Infringement of the 519 Patent in Violation of 35 U.S.C. § 271**

120. Jibbitz realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

121. The 519 Patent was duly and legally issued by the USPTO and is a valid and enforceable patent.

122. Five Below has directly infringed the 519 Patent in violation of 35 U.S.C. § 271(a) by displaying (i.e., using) on the Five Below Website the Accused Charms with molded shoes, making the Accused Charms, and selling the Accused Charms together with molded shoes.

123. Five Below has directly infringed the claims of the 519 Patent, including at least Claim 27 of the 519 Patent.

124. Claim 27 of the 519 Patent recites a system for securing a decorative accessory, the system comprising;

> a wearable item having at least one expandable hole, the at least one expandable hole formed of a moldable foam material in a molded portion of the wearable item;
>
> a shaft having first and second ends;
>
> a first shoulder secured to the first end of the shaft, the first shoulder being configured for insertion through one of the at least one expandable hole and configured to engage an inner surface of the wearable item, the first shoulder being larger in diameter than the expandable hole through which it is inserted when the expandable hole is in its unexpanded state; and
>
> a second shoulder secured to the second end of the shaft, the second shoulder being configured to engage an outer surface of the wearable item, the second shoulder comprising the decorative accessory.

125. When an Accused Charm is integrated with a molded shoe, the resulting system (the "Accused Product") includes all of the elements of, and therefore infringes, Claim 27 of the 519 Patent. Five Below offers and sells the Accused Product, thereby providing a complete system that infringes Claim 27 of the 519 Patent.

126. Attached hereto as Exhibit I is a claim chart that provides further detail and photographic evidence showing how the Accused Product sold by Five Below infringes at least Claim 27 of the 519 Patent.

127. Five Below has also induced infringement of and contributorily infringed the 519 Patent, in violation of 35 U.S.C. §§ 271(b) and 271(c). Five Below has known of the 519 Patent and its infringement thereof since at least March 4, 2026, when Crocs sent Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter .

128. Five Below sells the Accused Product for customer integration in a system that directly infringes Claim 27 of the 519 Patent as depicted in Exhibit I, despite knowledge of (or willful blindness to) the fact that such a system infringes the 519 Patent. The Accused Product is especially made or adapted to infringe the 519 Patent, is not a staple article of commerce, and has no substantial non-infringing uses. Five Below is therefore liable for both active inducement of infringement and contributory infringement of the 519 Patent.

129. Five Below's infringement of the 519 Patent has been willful. Five Below has directly and indirectly infringed the 519 Patent despite knowledge of (or willful

blindness to) the facts underlying the infringement at least since receiving the March 4, 2026 Demand Letter.

130. As a result of Five Below's infringement, Jibbitz has suffered and will continue to suffer money damages, loss of revenue, lost sales, loss of profits, and irreparable harm.

**EIGHTH CAUSE OF ACTION**

**Infringement of the 814 Patent in Violation of 35 U.S.C. § 271**

131. Jibbitz realleges and incorporates by reference each of the allegations contained in paragraphs 1 through 54 of this Complaint as if fully set forth herein.

132. The 814 Patent was duly and legally issued by the USPTO and is a valid and enforceable patent.

133. Five Below has directly infringed the 814 Patent in violation of 35 U.S.C. § 271(a) by displaying (i.e., using) on the Five Below Website the Accused Charms with molded shoes, making the Accused Charms, and selling the Accused Charms together with molded shoes.

134. Five Below has directly infringed the claims of the 814 Patent, including at least Claim 16 of the 814 Patent.

135. Claim 16 of the 814 Patent recites a system for securing a decorative accessory, the system comprising;

> an article of clothing having an exterior surface, an interior surface and at least one expandable hole formed in a molded portion of the article

of clothing, the expandable hole extending between and through the exterior surface and the interior surface of the article of clothing;

a shaft having first and second ends;

a first shoulder secured to the first end of the shaft, the first shoulder being configured for insertion through one of the at least one expandable hole and configured to engage the interior surface of the article of clothing, the first shoulder being larger in diameter than the expandable hole through which it is inserted when the expandable hole is in its unexpanded state; and

a second shoulder secured to the second end of the shaft, the second shoulder being configured to engage the exterior surface of the article of clothing, the second shoulder comprising the decorative accessory.

136. When an Accused Charm is integrated with a molded shoe, the resulting system (the "Accused Product") includes all of the elements of, and therefore infringes, Claim 16 of the 814 Patent. Five Below offers and sells the Accused Product, thereby providing a complete system that infringes Claim 16 of the 814 Patent.

137. Attached hereto as Exhibit J is a claim chart that provides further detail and photographic evidence showing how the Accused Product sold by Five Below infringes at least Claim 16 of the 814 Patent.

138. Five Below has also induced infringement of and contributorily infringed the 814 Patent, in violation of 35 U.S.C. §§ 271(b) and 271(c). Five Below has known of the

814 Patent and its infringement thereof since at least March 4, 2026, when Crocs sent Five Below the Demand Letter. Five Below continued its infringing activities despite receiving notice of its infringement in the Demand Letter.

139. Five Below sells the Accused Product for customer integration in a system that directly infringes Claim 16 of the 814 Patent as depicted in Exhibit J, despite knowledge of (or willful blindness to) the fact that such a system infringes the 814 Patent. The Accused Product is especially made or adapted to infringe the 814 Patent, is not a staple article of commerce, and has no substantial non-infringing uses. Five Below is therefore liable for both active inducement of infringement and contributory infringement of the 814 Patent.

140. Five Below's infringement of the 814 Patent has been willful. Five Below has directly and indirectly infringed the 814 Patent despite knowledge of (or willful blindness to) the facts underlying the infringement at least since receiving the March 4, 2026 Demand Letter.

141. As a result of Five Below's infringement, Jibbitz has suffered and will continue to suffer money damages, loss of revenue, lost sales, loss of profits, and irreparable harm.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, by reason of the foregoing, Plaintiffs Crocs, Inc. and Jibbitz, Inc. request that this Court enter judgment in their favor and for relief against Defendant Five Below, as follows:

A. A judgment that Defendant Five Below has:

1. Committed trademark infringement, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

2. Used false designations of origin, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a);

3. Committed trademark dilution, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c);

4. Engaged in trade dress infringement and unfair competition, in violation of the common law;

5. Infringed Crocs' rights in the 450 Patent, in violation of 35 U.S.C. § 271; and

6. Infringed, induced infringement of, and contributorily infringed Jibbitz's rights in the Jibbitz Patents, in violation of 35 U.S.C. § 271.

B. A permanent injunction restraining and enjoining Defendant Five Below, and all of its agents, servants, officers, employees, successors, and assigns, and all other persons or entities in active concert or participation with them, including but not limited to all sellers of Five Below products on Amazon.com or other third party sales platforms, from:

1. Selling, marketing, advertising, importing, or purchasing products that are confusingly similar to the Crocs Classic Clog shoes or colorable imitations thereof;

2. Using the Crocs Classic Clog Trade Dress or any other confusingly similar designation, alone or in combination with other words, phrases, symbols, or designs, as trademarks, trade names, domain name components or otherwise, to market, advertise, or identify any of Defendant Five Below's goods or services;

3. Otherwise infringing or diluting Plaintiff Crocs' trademark or trade dress rights;

4. Taking any other action likely to cause confusion, mistake, or deception as to the source or origin of Defendant Five Below's products or services or as to any authorization, sponsorship, approval, or affiliation relationship between Defendant Five Below and Plaintiff Crocs;

5. Unfairly competing with Plaintiff Crocs in any manner whatsoever or otherwise injuring Crocs' business reputation in the manner complained of herein;

6. Making, using, offering to sell, selling, distributing, and/or importing footwear that infringes Crocs' rights in the 450 Patent;

7. Making, using, offering to sell, selling, distributing, and/or importing, during the remaining terms of the Jibbitz Patents, charms that

infringe Jibbitz's rights in the Jibbitz Patents, and from inducing and contributing to the infringement of the Jibbitz Patents; and

8. Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in sub-paragraphs 1 through 7 above;

C. An order pursuant to 15 U.S.C. § 1117, awarding all profits received by Defendant Five Below from the sales and revenues of any kind made as a result of Defendant Five Below's sales of Five Below's infringing products, and the damages, to be determined, that Plaintiff Crocs has suffered as a result of Defendant Five Below's sales and marketing of Five Below's infringing products;

D. An order awarding damages and costs to the fullest extent provided for by applicable law, including treble damages or punitive damages, whichever is greater;

E. An award of damages, including lost profits and a reasonable royalty, adequate to compensate Crocs and Jibbitz for Defendant Five Below's acts of patent infringement;

F. An award of exemplary damages in the amount up to three times actual damages, for Defendant Five Below's willful actions in violation of Jibbitz's intellectual property rights, pursuant to 35 U.S.C. § 284;

G. An order pursuant to 15 U.S.C. §§ 1116 and 1118 requiring Defendant Five Below, its agents, servants, officers, employees, successors, and assigns, to destroy all

inventory of Five Below's infringing products that are in their possession, custody, or control;

H. An order requiring Defendant Five Below to destroy any and all remaining charms and shoes or wearable items in its possession that violate Jibbitz's rights;

I. An order, pursuant to 15 U.S.C. § 1116, requiring Defendant Five Below to file with the Court and serve upon Plaintiffs within 30 days after the entry of the Court's permanent injunction a report, in writing and under oath, setting forth in detail the manner in which Defendant Five Below has complied with Paragraphs B, G and H above;

J. An award of attorney's fees and costs pursuant to federal law under 15 U.S.C. § 1117(a) and 35 U.S.C. § 285;

K. An order awarding Plaintiffs pre-judgment and post-judgment interest; and

L. Such further equitable, legal or other relief and damages as this Court deems just and proper.

Date: September 18, 2026

Respectfully submitted,

KING & SPALDING LLP

/s/ Bruce W. Baber
Bruce W. Baber
bbaber@kslaw.com
1180 Peachtree Street
Atlanta, Georgia 30309
Telephone: 404-572-4600

Angela Tarasi
atarasi@kslaw.com
1401 Lawrence Street
Suite 1900
Denver, Colorado 80202
Telephone: 720-535-2300

Of Counsel:

Kathleen E. McCarthy
kmccarthy@kslaw.com
Ojeiku C. Aisiku
oaisiku@kslaw.com
1290 Avenue of the Americas
14th Floor
New York, New York 10104
Telephone: 212-556-2100

Attorneys for Plaintiffs
CROCS, INC. and
JIBBITZ, INC.